R. C. SEXTON v. JAMES DANIEL LILLEY

No. 692SC197

(Filed 28 May 1969)

1. **Pleadings § 15; Torts § 7— release from liability — burden of proof**

    Defendant who pleads a release in bar of plaintiff's claim has the burden of proving such defense by the greater weight of the evidence.

2. **Pleadings § 15; Torts § 7— release from liability — plea in bar — trial prior to trial of main action**

    A plea of a release is a plea in bar which may be tried prior to the trial of plaintiff's cause of action.

3. **Torts § 7— avoidance of a release — burden of proof**

    The burden of proof with respect to avoiding a release after the execution thereof is admitted or established is on the party seeking to set the release aside.

4. **Cancellation of Instruments § 2; Torts § 7— release from liability — setting aside for fraud**

    A release from liability is vitiated by fraud in the same manner as any other instrument, and fraud vitiates the entire instrument and not merely that part to which the fraudulent misrepresentation relates.

5. **Cancellation of Instruments § 2— setting aside contract for fraud**

    In order to obtain relief from a contract on the ground of fraud, the complaining party must show a false factual representation known to be false or made in culpable ignorance of its truth with a fraudulent intent, which representation is both material and reasonably relied upon by the party to whom it is made to such party's injury.

6. **Cancellation of Instruments § 2— failure to read written contract**

    One who signs a written contract without reading it when he can do so understandingly is bound thereby unless the failure to read is justified by some special circumstances and he acted with reasonable prudence in signing the contract without reading it.

**7. Cancellation of Instruments § 10;     Torts § 7—     release from liability — setting aside for fraud — sufficiency of evidence**

In an action for personal injuries and property damage resulting from a collision between plaintiff's truck and defendant's automobile, plaintiff's evidence *is held* sufficient to be submitted to the jury on the issue of whether a release executed by plaintiff was fraudulently obtained by defendant's agents where it tends to show that plaintiff had a sixth grade education and could read a little when he had his glasses, that plaintiff signed the release at his store while his glasses were at his home, and that plaintiff failed to get his glasses and read the release before signing it because defendants' agents, one of whom was also plaintiff's insurance agent, falsely told him that he was signing a release only for paying for his truck to be repaired.

APPEAL by plaintiff from *Cowper, J.,* November 1968 Session of Superior Court of MARTIN County.

Plaintiff seeks to recover of the defendant for property damage and personal injuries alleged to have been sustained by him as a result of collision between a pickup being operated by plaintiff and an automobile being operated by defendant. Plaintiff alleged that the defendant was actionably negligent in the operation of his automobile in that he was operating it in a careless and reckless manner without keeping it under proper control, without keeping a proper lookout, on the wrong side of the road, by failing to yield the right of way to plaintiff, at a speed greater than that allowed by law, to wit, 70 miles per hour, and that the defendant drove his vehicle into his left lane of travel in attempting to pass three or four automobiles which were traveling in the same direction in which he was proceeding when the left side of the highway was not free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be made in safety.

Defendant, in his answer, denies the material allegations of the complaint and as a further answer and affirmative defense says that the plaintiff executed a release to the defendant in complete release and discharge of all of his damages, both to property and to person. Defendant attached a copy of the alleged release to his answer marked Exhibit "A".

Plaintiff filed a reply to the "Answer of the defendant" in which he "admits that he signed a paperwriting on or about the 14th day of March, 1966, without reading the same"; that the agent of the defendant fraudulently induced him to sign it without reading it; and "that the agent of the defendant made representations which were false and known to be false with a fraudulent intent, which representations were both materially and reasonably relied upon by the plaintiff and that the plaintiff suffered injury thereby."

Plaintiff offered evidence which in substance tended to show that he suffered personal injuries and that his automobile was damaged on 4 March 1966 by the actionable negligence of the defendant.

"At the close of plaintiff's evidence the defendant moved for a judgment as of nonsuit except as to the property damage." The court allowed the motion and plaintiff excepted.

The court entered the following judgment:

"This cause coming on to be heard and being heard before the undersigned Judge Presiding and a Jury, at the November, 1968 Term of the Superior Court of Martin County and at the close of the plaintiff's evidence, the defendant having made a motion for judgment of involuntary nonsuit as to all claims for damages except those set out in the release, to-wit, $1093.06 and the Court being of the opinion that the said release is a bar as to all claims for damages except those set out in the said release in the amount of $1093.06, and that said motion should be allowed;

It is now, therefore, ORDERED, ADJUDGED and DECREED that the plaintiff be and he is hereby nonsuited as to all claims for damages except those set out in the release in the amount of $1093.06."

To the signing and entry of the judgment the plaintiff objected, excepted, assigned error, and appealed to the Court of Appeals.

*Peel and Peel by Elbert S. Peel for plaintiff appellant.*

*Griffin and Martin by Clarence W. Griffin for defendant appellee.*

MALLARD, C.J.

Each party in his brief assumes that the release alleged by defendant is properly in evidence in this case. A careful reading of the pleadings reveal that defendant pleaded the release attached to his answer, marked Exhibit "A", but the plaintiff did not admit in his reply or in his testimony that he signed or executed this particular release. The plaintiff admits in his reply that he signed "a paper-writing on or about the 14th day of March, 1966." The defendant did not offer any evidence. Plaintiff upon being examined as a witness testified, among other things, about signing a release for fixing the car; and "when this paper was signed"; and "Mr. Lovelace and Mr. Mobley was present when I signed the paper"; and "Mr. Mobley was over there at the filling station when I signed this document"; and "I doubt if I had had my glasses there in the store that I would have signed this paper which I signed because of what he said." But

there is nothing in the record to indicate to what paper the witness was referring.

Defendant, in his brief, asserts that the basis of his motion for judgment as of nonsuit was not that the defendant was not at fault, but was based upon a release signed by the plaintiff, appellant, on March 14, 1966.

[1, 2]   When defendant pleaded a release in bar of plaintiff's claim, absent an admission with respect thereto, the burden of proof rested upon him to establish such affirmative defense by the greater weight of the evidence. 3 Strong, North Carolina Index 2d, Evidence § 9. Defendant's plea of a release is a plea in bar to plaintiff's cause of action, which could be tried prior to the trial of plaintiff's cause of action. *Cowart v. Honeycutt,* 257 N.C. 136, 125 S.E. 2d 382. The record is silent as to whether only the plea in bar was being heard or whether the case was being heard on its merits. The offering of expert medical testimony as to permanent injuries sustained by plaintiff would indicate the case was being tried on its merits. The form of the judgment however, would seem to indicate it was being heard only on the plea in bar asserted by defendant. Assuming that the plea in bar was being tried prior to the trial of the cause on its merits, we are of the opinion and so hold that the admission in the pleadings and the testimony offered by plaintiff do not establish defendant's plea in bar so as to support the judgment entered herein.

The judgment entered herein indicates that the trial judge was of the opinion that there was ample evidence of defendant's negligence and of damages sustained by plaintiff to require submission of the case to the jury.

[3, 4]   The burden of proof with respect to avoiding a release after the execution thereof is admitted or established, is on the party asserting the affirmative. The rule is stated in 7 Strong, North Carolina Index 2d, Torts, § 7, p. 227 as follows:

"A release from liability is vitiated by fraud in the same manner as any other instrument, and fraud vitiates the entire instrument and not merely that part to which the fraudulent misrepresentation relates. The burden is on the injured party, if he seeks to set aside a release for fraud, mistake, or other vitiating element, to prove the matters in avoidance."

While the judgment entered herein must be reversed and a new trial awarded, we feel that in the exercise of our discretion we ought to discuss and express an opinion on the question the parties attempted to raise on this appeal.

**[5, 6]**   Assuming that the execution of the release attached to defendant's answer and marked Exhibit "A" had been admitted or proven we think the question of whether there was sufficient evidence to require submission of this case to the jury on the issue of fraud in the giving and securing of the release is controlled by the principles of law set forth in *Davis v. Davis*, 256 N.C. 468, 124 S.E. 2d 130, where it is said:

> "To obtain relief from a contract on the ground of fraud, the complaining party must show: a false factual representation known to be false or made in culpable ignorance of its truth with a fraudulent intent, which representation is both material and reasonably relied upon by the party to whom it is made, who suffers injury as a result of such reliance. . . .

> The law imposes on everyone a duty to act with reasonable prudence for his own safety. So one who contracts with another cannot ignore the contract merely because he becomes dissatisfied upon learning of the obligation assumed when, without excuse, he made no effort to ascertain the terms of the contract at the time he executed it. One who signs a written contract without reading it, when he can do so understandingly is bound thereby unless the failure to read is justified by some special circumstance. *Harris v. Bingham*, 246 N.C. 77, 97 S.E. 2d 453; *Harrison v. R. R.*, 229 N.C. 92, 47 S.E. 2d 698; *Ward v. Heath*, 222 N.C. 470, 24 S.E. 2d 5; *Presnell v. Liner*, 218 N.C. 152, 10 S.E. 2d 639; *Breece v. Oil Co.*, 211 N.C. 211, 189 S.E. 498; *Bank v. Dardine*, 207 N.C. 509, 177 S.E. 635; *Aderholt v. R. R.*, 152 N.C. 411, 67 S.E. 978.

> To escape the consequences of a failure to read because of special circumstances, complainant must have acted with reasonable prudence."

**[7]**   Plaintiff's evidence is as follows: He had a 6th grade education and could read a little when he had his glasses. He operated a store and farm, but his wife did the book work. That on March 14, 1966 he carried his insurance with Mr. Hildreth Mobley and had been doing so for about 15 years, and had known him for about twenty years. On that date Mr. Mobley together with a Mr. Lovelace (whom he did not know prior to that) came to his store and asked him to go out and talk to them. One of them started talking to him about his damaged car and told him that their adjuster had adjusted the damage to his car and had "made it nearly two hundred more than the Chevrolet people did." Then he was told by them about the patrolman's report of how the collision occurred and after they

asked plaintiff about his injuries one of them said, "Well, go ahead and sign this report to go get your check for the car." Plaintiff testified "I thought I was signing a release for fixing the car. It is what he said it was anyway. I did not read it. He did not ask me to read it. . . . I cannot read that writing. I can read it, or most of it, with my glasses, but I still can't understand after I read it. Lots of words I cannot understand. I did not have any glasses that day. They were home, in Jamesville, about 300 or 400 yards from where I was. . . . I knew Mr. Mobley and carry my insurance with Mr. Mobley, most of it. I have been doing that for 15 years. I had confidence in Mr. Mobley, knew him, or thought I knew him well. I did not have any glasses with me. . . . I thought I was signing a patrolman's report because he said that is where he got it from. He said it was a release so that they would pay the bill at the Chevrolet place. What he was reading he told me was the patrolman's report. He told me I was signing a release, a release to pay for the truck. He said the check will be here in a few days. When I signed it I knew I was signing a release only for paying for the car. This is all he talked about."

We think plaintiff's evidence would permit, but not compel, the jury to find: (1) Plaintiff's failure to go to his home and get his glasses and read the release before signing it was due to Mr. Mobley and Mr. Lovelace telling him that he was signing a release so they would pay the bill on the truck at the Chevrolet place, and that he was signing a release only for paying for the pickup being repaired. (2) That this was a false representation of a material fact, which was known by Mr. Mobley and Mr. Lovelace to be untrue. (3) That such statement was reasonably calculated to deceive the plaintiff. (4) That such statement was made by them with intent to deceive the plaintiff and to induce him to sign the release. (5) That such statement did in fact deceive the plaintiff, and that the plaintiff actually relied upon the false representation of such material fact in the manner contemplated or manifestly probable, and thereby suffered damage by signing the release for an inadequate consideration. (6) That plaintiff acted with reasonable prudence in relying upon the actual and implied assurances of his own insurance agent, Mr. Mobley, and was justified in signing the release without going and getting his glasses and reading it under the special circumstances revealed by this evidence. See *Cowart v. Honeycutt, supra;* and *Davis v. Davis, supra.*

For the reasons stated the judgment of nonsuit is reversed.

Reversed.

BRITT and PARKER, JJ., concur.