FRANK ZICARI, Doing Business as J. ZICARI PRODUCE Co., et al., Appellants, *v.* JOSEPH HARRIS Co., INC., Respondent.

Fourth Department, October 30, 1969.

*Saperston, Wiltse, Duke, Day & Wilson* (*Lawrence J. Gallick* of counsel), for appellants.

*Harris, Beach, Keating, Wilcox, Dale & Linowitz* (*Edward R. Macomber* of counsel), for respondent.

MARSH, J. P.  Plaintiff Zicari in his complaint alleges that he bought some cabbage seed known as 255 Danish Ballhead Harris Special Strain from defendant Joseph Harris Co., Inc., located at Moreton Farm, Rochester, New York.  He used the seed to plant about 70 acres of his farm land.  When the 1966 cabbage crop grown from this seed matured it was found the cabbage plants were worthless, being diseased with a fungus known as Phoma Lingam (Tode) Desmazieres or Blackleg.  He claimed damages in the amount of $77,000 for the 1966 cabbage crop and $100,000 in damages for inability to supply customers with cabbage after the 1966 growing season.  The first cause of action seeks recovery based upon defendant's negligence in failing properly to treat the cabbage seed before sale so as to eliminate the Blackleg fungus.  Zicari's second cause of action seeks

recovery based upon negligent misrepresentation that the cabbage seed had been properly treated so as to eliminate the Blackleg fungus. Zicari's third cause of action is based upon the implied warranty of fitness for a particular purpose for which defendant knew plaintiff was purchasing the seed. Zicari's fourth cause of action is based upon the implied warranty that the seed was of merchantable quality.

Plaintiffs Emilio, Gilbert and Elmer DiLodovico obtained their seed from plaintiff Zicari and allege basically the same four causes of action. Their position as undisclosed principals of their agent Zicari is conceded and affords them the same legal status in their relationship to defendant as Zicari. Plaintiff Frank Swercznski also alleges essentially the same causes of action as the other plaintiffs except that like Zicari he purchased his own seed directly from defendant.

Plaintiffs appeal from the court's disposition of the various motions and cross motions for summary judgment on the third cause of action (warranty of fitness) and the fourth cause of action (warranty of merchantability). The first two causes of action based on negligence and negligent misrepresentation are not involved in this appeal.

Special Term dismissed the third cause of action posited on warranty of fitness holding that defendant had contractually excluded the warranty of fitness in its order forms. On its order forms there appears as the only print in paragraph form just before the space for writing the order the following:

"All orders subject to the following conditions of sale: Joseph Harris Co., Inc., warrants that seed, plants or bulbs sold will be labeled on the containers and that they will conform to the label description as required under State and Federal Seed Laws. Our liability on this warranty is limited in amount to the purchase price of the seeds, plants, or bulbs.

"We make no other or further warranty, express or implied, including any other or further warranty for fitness of purpose. Our liability for (1) breach of contract or (2) mistake or omission in connection with the seeds, plants or bulbs, shall similarly be limited in amount to the purchase price.

"No liability hereunder shall be enforceable unless the buyer or user reports to the seller within a reasonable period (not to exceed 30 days) after discovery, any condition that might lead to a complaint."

Both plaintiffs Zicari and Swercznski signed purchase orders containing this language. There are some factual disputes with respect to the Zicari order as Zicari claims his original order was for 75 pounds of cabbage seed but was modified subse-

quently to 19 pounds of Australian cabbage seed. Zicari also claims an oral warranty that defendant would stand behind the Australian seed when Zicari inquired whether it might not be infected with Blackleg.

Subdivision (2) of section 2–316 of the Uniform Commercial Code provides: " Subject to subsection (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that ' There are no warranties which extend beyond the description on the face hereof ' ".

Defendant's warranty of fitness exclusion is written into its printed purchase orders which are signed by the purchasers including plaintiffs. Conspicuous is defined in subdivision (10) of section 1–201: " A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: NONNEGOTIABLE BILL OF LADING) is conspicuous. Language in the body of a form is ' conspicuous ' if it is in larger or other contrasting type or color. But in a telegram any stated term is ' conspicuous '. Whether a term or clause is ' conspicuous ' or not is for decision by the court ".

In the Official Comment to section 1–201 it states: " 10 ' Conspicuous '. New. This is intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it."

It would appear that the condition of sale on plaintiffs' order blanks meets the requirements of subdivision (2) of section 2–316 of the Uniform Commercial Code with respect to exclusion of the warranty of fitness even to the extent of specifying the warranty of fitness which is not required by subdivision (2) of section 2–316.

However plaintiff Zicari raises questions with respect to the parol evidence rule and subsequent oral modification of the seed order. Zicari claims the order of 75 pounds of cabbage seed was modified to 19 pounds when defendant specified it could not deliver domestic seed but could fill the order with Australian seed. Zicari then claims an oral guarantee to warrant the absence of Blackleg from the Australian seed. Given this posture, although the written warranty meets the tests of the Uniform Commercial Code to exclude the warranty of fitness, a full

factual exploration should be had on Zicari's third cause of action.

Special Term granted plaintiffs Zicari and Swercznski judgment for the price of the seed based on the fourth cause of action. The court found that the conditions of sale while purporting to exclude all warranties express or implied except the warranty that the seed conformed to the description on the packages failed effectively to exclude the warranty of merchantability because subdivision (2) of section 2–316 of the Uniform Commercial Code requires the word " merchantability " to be specifically mentioned if it is to be excluded. The Official Comment following section 2–316 of the Uniform Commercial Code states: " 3. Disclaimer of the implied warranty of merchantability is permitted under subsection (2), but with the safeguard that such disclaimers must mention merchantability and in a case of writing must be conspicuous." This reasoning is in complete accord with the literal language of the statute.

The court went on to determine however that defendants had established that the usage of the trade excluded the implied warranty of merchantability as sanctioned by paragraph (c) of subdivision (3) of section 2–316 which provides: " (3) Notwithstanding subsection (2)   *   *   *   (c) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade." Defendant asserts that all of the seedsmen it knows have similar exclusions of implied warranties and limitations on express warranties and any other category of liabilities to the purchase price of the seeds. The plaintiffs state that they have no such common understanding and were unaware of the extent of limitations. Subdivision (1) of section 1–205 of the Uniform Commercial Code provides: " A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Defendant alleges no circumstance in its affidavits from which it can be inferred that plaintiffs and defendant mutually understood that the implied warranty of merchantability was not a part of their transactions in seed.

Subdivision (2) of section 1–205 provides: " A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such usage must be proved as facts. If it is established that such usage is embodied in a written trade code or similar writing the interpretation of the

writing is for the court." The only evidence defendant asserts in its affidavit supporting its allegation that exclusion of the warranty of merchantability is a usage of trade in the seed business is the claim that the other seedsmen in the area use comparable exclusionary language. The fact that the other seedsmen use exclusionary language in their conditions of sale on purchase orders, which language does not comply with subdivision (2) of section 2–316 of the Uniform Commercial Code, would not establish as a matter of law that such is a usage of the trade understood by all persons in the seed business and farming. Defendant also alludes to the fact that 400 of its customers were damaged by the cabbage seed infected with Blackleg and only plaintiffs made any claim for the consequent damage. This fact alone is not enough for the court to conclude that a usage of trade had been established with respect to such exclusion. The cases antedating the Uniform Commercial Code permitted usages of trade to supplement and explain contractual provisions. (*Walls* v. *Bailey,* 49 N. Y. 464 [1872]); see, also, Ann. following Note [3] N. Y. Ann. succeeding section 1–205 of the Uniform Commercial Code. There should be a full exploration of the facts with respect to the understanding of the trade as to the exclusion of the implied warranty of merchantability.

Special Term held that the implied warranty of merchantability was excluded by trade usage but then granted plaintiffs Zicari and Swercznski summary judgment for the amount paid for their seed on the basis of the implied warranty of merchantability limiting recovery as provided in the express conditions of sale. It is difficult to determine upon what basis the court permitted the plaintiffs their limited recovery. Since it granted plaintiffs summary judgment for the purchase price of the seed under the fourth cause of action, it must be concluded that the court found that the usage of the trade limited the implied warranty of merchantability to the purchase price of the seed.

It appears clear, as the court found, that defendant failed expressly to exclude the implied warranty of merchantability by failing to mention the word merchantability in the condition of sale. The further question arises whether the limitation of plaintiffs' remedies to the purchase price of the seed must also mention merchantability in order to limit the damages for a breach thereof.

Subdivision (4) of section 2–316 provides: "Remedies for breach of warranty can be limited in accordance with the provisions of this Article on liquidation or limitation of damages and on contractual modification of remedy (sections 2–718 and 2–719)."

Subdivision (3) of section 2–719 provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not."

Paragraph (a) of subdivision (1) of section 2–719 provides: "(a) The agreement may * * * limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts".

The sentence limiting any breach of contract remedy to return of the purchase price of the seed, etc., does not appear to have application to the implied warranty of merchantability for the same has not been specifically mentioned. Subdivision (2) of section 2–316 states that the warrant of merchantability not only may not be excluded without specific mention but may not be modified in any of its parts. Paragraph (a) of subdivision (1) and subdivision (3) of section 2–719 would not appear to counter the requirements that modification of the warranty requires specific mention of merchantability. In *Wilson Trading Corp. v. David Ferguson, Ltd.* (23 N Y 2d 398) plaintiff sold defendant some yarn expressly warranting that the yarn was of merchantable quality. The seller then eliminated, by the sales contract, claims relating to shade if made after weaving, knitting or processing, and in no case more than 10 days after receipt of the yarn. The court held that the remedial provision failed in its purpose of permitting plaintiff to make claim for shade defects within a reasonable time after discovery (§ 2–719, subd. [2]). In discussing the limitation of the express warranty the opinion stated: "Here, the contract expressly creates an unlimited express warranty of merchantability while in a separate clause purports to indirectly modify the warranty without expressly mentioning the word merchantability. Under these circumstances, the language creating the unlimited express warranty must prevail over the time limitation insofar as the latter modifies the warranty." (*Wilson Trading Corp. v. David Ferguson, Ltd., supra,* p. 405.)

Although the court's decision rested on section 2–719 of the Uniform Commercial Code the quoted language appears to lend substance to the conclusion that in order to limit in any way the warranty of merchantability it must be mentioned by name in the limiting clause.

The question of the unconscionability of limiting the recovery to the purchase price of the seed is a matter of law for the court, and not an issue of fact for the jury. (See Comment 3 to section 2–302 of the Uniform Commercial Code.) Therefore the normal rules of summary judgment are inapplicable. But the statute requires: "a reasonable opportunity to present evidence as to [a clause's] commercial setting, purpose and effect" (Uniform Commercial Code, § 2–302, subd. [2]), and the court's determination of the issue could not be made without a hearing.

The order insofar as appealed from should be reversed and the motions denied, except as to the dismissal of the third cause of action in the complaint of plaintiff Swercznski, which should be affirmed.

GABRIELLI, MOULE, BASTOW and HENRY, JJ., concur.

Order insofar as appealed from unanimously reversed, with costs, and motions denied, except as to the dismissal of the third cause of action in the complaint of plaintiff Swercznski which is affirmed.