ANGOLA FARM SUPPLY & EQUIPMENT COMPANY (A CORPORATION) v. FMC
CORPORATION, SPARTAN EQUIPMENT COMPANY (A CORPORATION) AND
INDFOR EQUIPMENT, LTD. (A CORPORATION)

No. 813SC1248

(Filed 2 November 1982)

1. **Uniform Commercial Code § 15— exclusion of implied warranty of merchantability**

   The requirements of G.S. 25-2-316(2) for the exclusion of an implied warranty of merchantability were met where the manufacturer's written warranty specifically, in boldface, all capital print, excluded such warranty. G.S. 25-2-314; G.S. 25-1-201(10).

2. **Uniform Commercial Code § 13— no implied warranty of fitness by manufacturer or non-selling distributor**

   There was no implied warranty of fitness of logging equipment by either the manufacturer or by a non-selling distributor who serviced the equipment where plaintiff purchased the equipment from another distributor, and neither the manufacturer nor the non-selling distributor could have known of the particular purpose for which plaintiff was purchasing the equipment. G.S. 25-2-315.

3. **Uniform Commercial Code § 15— express warranty voided by purchaser's actions**

   Plaintiff's unauthorized repairs of logging equipment voided the manufacturer's written warranty which, by its own terms, did "not apply to any product which has been subjected to . . . adjustment, or repair performed by anyone other than [the manufacturer] or a designated authorized agent."

4. **Unfair Competition § 1— refusal to supply parts list—no illegal restraint of trade**

   Refusal by defendant manufacturer and defendant distributor to provide plaintiff with a list showing the names, identification, manufacturer, and fair market value of parts for logging machines purchased by plaintiff did not constitute an illegal restraint of trade in violation of G.S. Ch. 75.

APPEAL by plaintiff from *Reid, Judge.* Judgment entered 12 June 1981, in Superior Court, CRAVEN County. Heard in the Court of Appeals 14 September 1982.

Plaintiff brought this action against defendants for breach of warranties, breach of contract, and illegal restraint of trade, all of which were related to the sale by defendant Indfor Equipment, Ltd. (Indfor) and service by defendant Spartan Equipment Company (Spartan) of two log forwarders manufactured by defendant FMC Corporation (FMC). The complaint alleged that, on 15 Oc-

tober 1977, plaintiff purchased from defendant Indfor, a Canadian corporation, a new FMC log forwarder for $85,208 and a demonstrator FMC log forwarder for $40,000. With the purchase of the log forwarders, plaintiff received a written warranty by FMC:

> FMC warrants that, if maintenance is performed in accordance with the FMC Woodlands Equipment Operation and Maintenance Manuals, which have been furnished with each machine, products manufactured by it will be free from defects in material and workmanship for a period of SIX (6) MONTHS FROM THE DATE PLACED IN SERVICE or twelve (12) months from the date of factory shipment, whichever occurs first. THIS WARRANTY IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY AND FITNESS OF ANY PRODUCT FOR A PARTICULAR PURPOSE NOT EXPRESSLY SET FORTH HEREIN. . . . FMC's warranty does not apply to any product which has been subjected to misuse, misapplication, neglect (including but not limited to improper maintenance), accident, improper installation, modification (including but not limited to use of unauthorized parts or attachments), adjustment, or repair performed by anyone other than FMC or a designated authorized agent.

> Limitation of remedies

> FMC's liability (whether under the theories of breach of warranty, negligence, strict liability, or contract) for its products shall be limited to repairing or replacing parts found by FMC to be defective, or at FMC's option, to refunding purchase price of such products or parts. At FMC's request, buyer will send, at buyer's expense, any allegedly defective parts to the FMC plant which manufactured them. FMC will not be liable for any incidental or consequential damages including without limitation the loss of use, income, profit, or production, or increased cost of operation, or spoilage of, or damage to material, arising in connection with the sale, installation, use of, inability to use, or the repair or replacement of, FMC's products.

> Any claim by buyer with reference to the goods sold hereunder shall be deemed waived by the buyer unless sub-

mitted to FMC in writing within ten (10) days from the date buyer discovered, or by reasonable inspection should have discovered, any claimed breach of the foregoing warranty. Any cause of action for breach of the foregoing warranty shall be brought within one year from the date the alleged breach was discovered or should have been discovered, whichever occurs first.

The provisions of the foregoing warranty and limitation of remedies are severable. If any provision shall be unenforceable for any reason, the other provisions shall remain effective.

After the purchase, according to plaintiff's complaint, (1) the log forwarders overheated and could not withstand the rigors of transporting logs in unimproved woodlands; (2) the torsion bars, the tracks and the road arms broke; and (3) other parts and materials were defective. Plaintiff alleged that defendant FMC breached its written warranty and its implied warranty of fitness for a particular purpose; that Spartan breached its contract with FMC (of which plaintiff was a third party beneficiary) by failing to repair the log forwarders; and finally, that, by refusing to provide it with a parts list for the log forwarders, both defendant FMC and defendant Spartan illegally restrained trade in violation of Chapter 75 of the North Carolina General Statutes.[1] Plaintiff sought various sets of damages including compensatory, incidental, and consequential.

In its answer, FMC admitted Indfor's sale of the log forwarders to plaintiff and admitted its written warranty. It set forth, however, several defenses to each of plaintiff's claims against it. First it alleged that the two pieces of equipment had been shipped by FMC to Indfor on 18 December 1974, and were, therefore, out of warranty at the time plaintiff purchased them. Second, FMC asserted that plaintiff had misused, improperly maintained, and neglected both log forwarders, thereby voiding any warranty. Third, FMC noted that, even if the equipment were under warranty, plaintiff had failed to notify FMC in writing within ten days of the breach as provided by the warranty.

1. Default judgment was entered against defendant Indfor when it failed to enter an answer to plaintiff's complaint. Plaintiff's allegations against Indfor are not considered in this appeal.

Fourth, under the warranty, FMC's payment of damages excluded incidental and consequential damages. FMC also asserted its belief that Spartan, as an accommodation to it, agreed gratuitously to provide warranty service to the plaintiff's log forwarders, that plaintiff and Spartan expressly understood that, because plaintiff had withheld money from the purchase price paid to Indfor, plaintiff was to pay for services and parts except for those parts which FMC accepted as defective. According to FMC, Spartan provided service to plaintiff's log forwarders until plaintiff withheld payment for services rendered.

The record on appeal contains no answer filed by defendant Spartan. Both defendant FMC and Spartan, however, filed motions for summary judgment. In conjunction with the motions, several affidavits and one deposition were filed. The deposition of plaintiff's president and principal stockholder John Taylor indicated that the two log forwarders had broken down and that defendants FMC and Spartan had failed to replace and repair damaged parts. Taylor acknowledged that FMC had sent a field service representative and Spartan, located in Charlotte, had sent repairmen to work on plaintiff's equipment in New Bern. Originally, plaintiff had paid for warranty service with money ($1,600) withheld from Indfor on the purchase price of the equipment. Taylor also admitted that one of the log forwarders about which he complained had never even been used and that, when Spartan put it on a cash basis, plaintiff, through its employees, had taken parts from it as well as from an old, burned machine to repair the other log forwarder.

An affidavit by the president of Spartan (Pfaff) stated that its agreement with FMC was contained in a Distributor Agreement of which plaintiff was not a third party beneficiary. The Distributor Agreement provides that, when FMC requests, a distributor who does not sell an FMC product must nevertheless perform delivery service and/or warranty service on FMC products sold within the distributor's territory. The affidavit of Pfaff denied that FMC had ever directed Spartan to perform warranty service on the log forwarders. Pfaff attached to his affidavit a letter written by John Taylor requesting that Spartan perform the thirty-day inspection service at plaintiff's expense. Because plaintiff refused to make full payment for its service, Spartan discon-

tinued its work. Spartan denied preventing plaintiff from obtaining information about FMC parts.

An affidavit by Taylor stated that neither FMC nor Spartan told him that plaintiff had to put its complaints in writing. He denied misuse of the equipment but admitted the possibility of skipping a maintenance call because Spartan wrongfully charged plaintiff for warranty work.

Based on the pleadings, affidavits, and deposition, the trial court entered an order finding no genuine issue of material fact and entering summary judgment for the two defendants. Plaintiff appealed.

*Henderson and Baxter, by Carl D. Lee and B. Hunt Baxter, Jr., for plaintiff-appellant.*

*Ward, Ward, Willey & Ward, by A. D. Ward and Joshua W. Willey, Jr., for defendant-appellee FMC Corporation.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Gaston H. Gage and Christian R. Troy, for defendant-appellee Spartan Equipment Company, Inc.*

HEDRICK, Judge.

Plaintiff brings forward six assignments of error, many of which are interrelated and all of which pertain to the propriety of summary judgment.

The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of trial when it can be readily determined that no material facts are in issue. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). This rule provides a drastic remedy, and must be used with due regard to its purposes and with a cautious observance of its requirements so that no person shall be deprived of a trial on a genuine disputed factual issue. *Id.* G.S. § 1A-1, Rule 56(c) establishes the standard for determining a motion for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.

Plaintiff's first argument is that summary judgment was improper because there was a genuine issue as to whether plaintiff was damaged by defendants' breach of (1) the implied warranty of merchantability, (2) the implied warranty of fitness for a particular purpose, and (3) the express warranty given by defendant FMC to the plaintiff. This argument, as well as three other arguments brought forward by plaintiff, overlooks the material facts as to which there were no genuine issues and which were the grounds for the summary judgment: (1) there was no implied warranty of merchantability; (2) neither defendant implied a warranty of fitness for a particular purpose; and (3) the express warranty made by defendant FMC had been voided by plaintiff's actions with regard to the two log forwarders.

[1]  Under G.S. § 25-2-314, a warranty that goods are merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. "Merchantable goods" is defined in G.S. § 25-2-314(2). An implied warranty of merchantability may be excluded or modified, G.S. § 25-2-314, if done in accordance with the provisions of G.S. § 25-2-316. That statute requires that language excluding or modifying the implied warranty of merchantability "must mention merchantability and in case of a writing must be conspicuous." G.S. § 25-2-316(2). Under G.S. § 25-1-201(10), "conspicuous" is defined as that which is "so written that a reasonable person against whom it is to operate ought to have noticed it." Determination of whether writing is conspicuous is a question of law for the court. *Billings v. Harris Co.*, 27 N.C. App. 689, 220 S.E. 2d 361 (1975), *aff'd*, 290 N.C. 502, 226 S.E. 2d 321 (1976). In the present case, FMC's written warranty specifically, in boldface, all capital print, excluded the implied warranty of merchantability. We believe that this satisfied the requirements for exclusion under G.S. § 25-2-316(2) and that there was, therefore, never any implied warranty of merchantability as to the two log forwarders.

[2]  Plaintiff's claim that there was an implied warranty of fitness for a particular purpose is rejected for different reasons. Under G.S. § 25-2-315, there is a warranty of fitness for a particular purpose "[w]here the seller at the time of contracting has reason to

know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. . . ." It is obvious from the undisputed facts of this case that the plaintiff purchased the two log forwarders from Indfor. Neither FMC nor Spartan was involved in the purchase and, therefore, neither could have known of a particular purpose for which plaintiff was purchasing the goods. Likewise, plaintiff could not have relied upon the judgment of parties not involved in the sale of the logging equipment. There was, therefore, no warranty of fitness implied by either defendant FMC or Spartan. Additionally, even if there could have been an implied warranty of fitness by FMC, the written warranty clearly excluded such warranty in a manner acceptable under the provisions of G.S. § 25-2-316.

[3] Finally, as to the express warranty provided by FMC, we can find no dispute in the following material facts: FMC and Spartan originally provided warranty service on the equipment.[2] Spartan did this even though it was the non-selling distributor of the product. Under the terms of the Distributor Agreement, Spartan agreed, if requested by FMC, to provide service to FMC products which it did not sell but which were in its distributorship area. That agreement was clearly for the benefit of FMC and Spartan and was not enforceable against Spartan by plaintiff. Certainly Spartan was to be paid for such service since it had not received from the purchase price of the equipment an amount to cover the servicing costs. Through a letter to Spartan from plaintiff's president, plaintiff acknowledged this when it stated that it would be "responsible for paying for this [thirty day] service as I have made arrangements with Indfor to pay for these service inspections directly." When Spartan insisted on payment for service in advance, plaintiff, through its employees, made unauthorized repairs on one log forwarder by removing parts from other equipment including the second log forwarder purchased from Indfor. Unauthorized repairs voided the written warranty which, by its

---

2. It is also undisputed that, when plaintiff took possession of the two logging machines, the written warranty had expired by virtue of its clause limiting liability to a period of six months from the date placed in service or twelve months from the date of factory shipment. There is some dispute, however, as to whether defendant FMC, in a letter, extended the time period. The determination that the written warranty was no longer in effect is not, therefore, based on this fact.

own terms, did "not apply to any product which has been sub-jected to . . . adjustment, or repair performed by anyone other than FMC or a designated authorized agent." Based on these facts, we can find no genuine issue of material fact concerning plaintiff's voiding of the express warranty.

[4] Plaintiff also argues that summary judgment was inap-propriate because there was a genuine issue as to whether de-fendants' actions in refusing to provide plaintiff with a parts list constituted an illegal restraint of trade under Chapter 75 of the North Carolina General Statutes. Plaintiff alleged in its complaint that the two defendants refused to provide it with a list showing the names, identification, manufacturer, and fair market value of parts for the logging machines. In its argument now, plaintiff alleges that "one of the factors that caused the defendant corpora-tions to cease providing warranty service . . . was the question-ing by . . . [the] president and principal stockholder of the plaintiff corporation of the arrangements between FMC and Spar-tan [the two defendants] relating to the pricing of parts." This action, according to plaintiff, amounted to defendants' unfair assertion of power. We disagree. There is nothing in Chapter 75 which would require equipment dealers or manufacturers to sup-ply consumers with a list of parts such as plaintiff requested. There was, in the record of this case, no indication that either defendant prevented plaintiff from shopping elsewhere for parts for the equipment. In fact, plaintiff's president acknowledged that he had successfully gone to other suppliers for parts. We can find no illegal restraint of trade in defendants' refusal to supply the list requested by plaintiff.

Plaintiff's final argument is that the trial court erred in granting summary judgment for defendant Indfor. We do not read the final judgment "in favor of each defendant" to include Indfor, against whom a default judgment had already been entered.

Summary judgment against plaintiff is

Affirmed.

Judges VAUGHN and HILL concur.